WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Fonji Delphine Ache,

          Petitioner,

v.

Pamela Bondi, et al.,

          Respondents.

No. CV-26-00593-PHX-RM (MTM)

**ORDER**

Self-represented Petitioner Fonji Delphine Ache, who is detained in the Eloy Detention Center, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Doc. 1.) Respondents filed a response to the Petition. (Doc. 9.) Petitioner filed a subsequent Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Doc. 13), which was docketed as a Motion to Amend in order to facilitate the Court's consideration of it, and the Court ordered a response (Doc. 17). For the following reasons, the Court will deny the Motion to Amend, grant Petitioner's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241, and order that Petitioner be given a bond hearing.

## I.    Background

Petitioner is a native and citizen of Cameroon. (Doc. 13 at 11.) Petitioner entered the United States without inspection on December 28, 2024. (*Id.*, Doc. 9 at 1-2.) Petitioner was apprehended by U.S. Border Patrol near Sasabe, Arizona the same day, and was given over to the custody of U.S. Immigration and Customs Enforcement. (Doc. 9 at 1-2.) She was placed in removal proceedings, and an immigration judge issued an order of removal

on May 28, 2025. (Doc. 13 at 4.) Petitioner appealed that order to the Board of Immigration Appeals, and her appeal remains pending. (*Id.*, Doc. 17 at 2.) Petitioner has remained detained since entering the United States on December 28, 2024. (*Id.*)

**II.    Motion to Amend**

In her subsequent § 2241 Petition, which was docketed as a Motion to Amend in order to facilitate the Court's consideration of it, Petitioner claims that her detention is unconstitutionally prolonged due to the lack of "concrete steps" taken toward her removal, and she adds several claims regarding the conditions of her detention and the physical and psychological effects her detention has had upon her. (Doc. 13.) A court "assessing the propriety of a motion for leave to amend" must consider five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "Futility alone can justify the denial of a motion for leave to amend." *Id.*

To the extent that Petitioner asserts a claim under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), in her subsequent § 2241 petition, that claim is at present premature. After the entry of a final removal order, there is a 90-day period during which the alien ordered removed must be detained. 8 U.S.C. § 1231(a)(2)(A). If removal does not occur during the 90-day period, further detention is statutorily authorized under certain circumstances. 8 U.S.C. § 1231(a)(6). In *Zadvydas*, the Court held that detention beyond the 90-day removal period is presumptively reasonable for 6 months; if an alien shows after the conclusion of the 6-month period that there is no significant likelihood of his removal in the reasonably foreseeable future, however, she should be released. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). The Court's holding in *Zadvydas* is confined to § 1231(a)(6). *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018).

Here, *Zadvydas* is inapplicable to Petitioner because she lacks an order of removal that is administratively final, and therefore she is not detained pursuant to § 1231(a)(6). Petitioner's order of removal is not administratively final because her appeal is still pending before the BIA. 8 C.F.R. § 1241.1 ("An order of removal made by the immigration judge .

- 2 -

. . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals.") Accordingly, Petitioner's subsequent § 2241 Petition is futile to the extent she asserts a *Zadvydas* claim.

Moreover, Petitioner's subsequent § 2241 Petition is also futile to the extent she challenges the conditions of her confinement. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," whereas "requests for relief turning on circumstances of confinement" should be presented in a separate civil rights action. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam). Accordingly, Petitioner's claims regarding the conditions of her confinement are not cognizable in this habeas corpus action.

Given that the claims asserted in Petitioner's subsequent § 2241 Petition are futile for the reasons discussed above, the Court will deny Petitioner's Motion to Amend.

### III.   The Petition

In her Petition, Petitioner states that "there is no dispute that Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b)." (Doc. 1 at 4.) Rather than challenging the statutory authority for her detention, Petitioner instead contends that she is entitled to a bond hearing as a matter of constitutional due process. (*Id.*) Respondents argue that "[a]liens detained under 8 U.S.C. § 1225(b)(2) may be detained through the completion of their removal proceedings without bond," and contend that "such detention is not unconstitutionally indefinite." (Doc. 9 at 4.)

### IV.   Discussion

Respondents assert that *Jennings v. Rodriguez*, 583 U.S. 281 (2018), stands for the proposition that detention throughout the completion of removal proceedings pursuant to § 1225(b) is "not unconstitutionally indefinite." (Doc. 9 at 4.) That argument must fail, however, because in *Jennings*, the Supreme Court only addressed an issue of statutory interpretation and expressly avoided constitutional questions. 583 U.S. at 312. As such, the Court will proceed to a constitutional due process analysis.

The Court's due process analysis consists of two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### a. Liberty Interest

"A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a liberty interest in freedom from detention.

### b. Due Process Regarding Petitioner's Prolonged Detention

If a liberty interest is found, the Court then determines whether the procedural protections provided are sufficient considering the "particular situation."[1] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, 2026 WL 797694, at *9–12 (E.D. Cal. Mar. 23, 2026) (applying the 3-factor *Lopez* test); *see also Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *7 (W.D. Wash. Mar. 6, 2026) (applying the 6-part *Banda* test) (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019)); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *22 (S.D. Ind. Mar. 13, 2026) (applying the same 6-factor test, but calling it the *Jamal A* test) (citing *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25-cv-3598-LL-BJW, 2026 U.S. Dist.

---

[1] The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

LEXIS 10299, at *11–15 (S.D. Cal. Jan. 20, 2026) (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the above-mentioned tests, the Court finds the *Banda* test the most appropriate to the situation in this matter. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[2] and *Lopez*[3] tests. Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07.[4]

---

[2] Under the *Mathews* test, the Court considers:
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[3] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

[4] In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, the undersigned finds that Petitioner has a strong private interest in her liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Turning next to the *Lopez* test, the Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and is], in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 2026 WL 797694, at *10. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held pursuant to § 1225(b), the Court accordingly elects to apply it.

### i.    Length of Detention.

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been held in ICE custody for approximately 17 months. Under the first *Banda* factor, where a petitioner's current detention exceeds a six-month threshold the "detention[] become less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, No. 2:26-cv-00039-TL, 2026 U.S. Dist. LEXIS 56882, at *8 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, No. 2:25-cv-02695-GJL, 2026 U.S. Dist. LEXIS 21291, at *8 (W.D. Wash. Feb. 2, 2026)). Petitioner has been detained for

---

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 5:21-CV-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's 17-month detention, the undersigned concludes that due process requires Petitioner be provided with an individualized bond hearing.

approximately 17 months. This is well beyond the six-month threshold, and well beyond the length of confinement other courts have found to be prolonged. *See, e.g.*, *Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 U.S. Dist. LEXIS 203614, at *13 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting relief.

### ii. Likely Duration of Future Detention

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Petitioner's pending appeal before the BIA, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Kadir*, 2025 U.S. Dist. LEXIS 203614, at *8 ("Petitioner's future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA.").

### iii. Conditions of Detention

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). In Petitioner's Motion to Amend, Petitioner details serious physical and psychological effects resulting from poor detention conditions. (Doc. 13 at 6-7.) She describes being given water that is not potable, food that does not comport

with her dietary needs, and medications that are ineffective to address her health conditions, which include diabetes and hypertension. (*Id.*) She also describes constant exposure to light and noise. (*Id.*) Petitioner states that this has caused her stomach issues, sleep issues, and exacerbated her high blood pressure, and that the overall fact of her prolonged detention has caused constant anxiety, stress, and depression. (*Id.*) The Court finds that this factor weighs strongly in favor of Petitioner.

### iv.  Delays in Removal Proceedings

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both which consider delays caused by the parties—together." *Maliwat v. Scott*, No. 2:25-CV-00788-TMC, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).  Respondents do not contend Plaintiff has caused any delays in this action.  Consequently, this factor is neutral.

The fifth factor considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).  It is unclear to what extent the delay is caused by the BIA's delay in resolving Petitioner's appeal.  Therefore, the fifth factor is also neutral.

### v.  Likelihood of Removal

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal,

'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11). Based on the current record, Petitioner has not established she is likely to prevail in her appeal before the BIA. Therefore, the sixth factor favors Respondents.

### vi.    Conclusion

Three factors favor Petitioner, including two that strongly favor her; two factors are neutral; and one factor favors Respondents. Based on these factors, the Court concludes that Petitioner's continued detention under § 1225(b)(2) has become unreasonable. Therefore, Petitioner is entitled to relief.

### V.    Remedy.

Where a noncitizen's detention under § 1225(b)(2) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral immigration judge. *See Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12 (finding that "there is no authority" supporting relief in the form of immediate release, but there is authority supporting relief in the form of a bond hearing) (cleaned up); *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2:26-cv-00217-KML, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a 1225(b)(2) petitioner and granting a bond hearing). At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS ORDERED** that the reference to Magistrate Judge Michael T. Morrissey is **withdrawn**.

**IT IS FURTHER ORDERED** that Eric Rokosky, Warden of the Eloy Detention Center is **substituted** for Unknown Party, Warden of the Eloy Detention Center.

**IT IS FURTHER ORDERED** that the Petition (Doc. 1) is **granted** as to

Petitioner's request for a bond hearing.

**IT IS FURTHER ORDERED** that Petitioner shall receive a bond hearing within **seven (7) days** of the date this Order is filed. The bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the Government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that Respondents shall file a notice of compliance within **two (2) days** of Petitioner's bond hearing or release.

**IT IS FURTHER ORDERED** that all pending motions (Docs. 3, 13) are **denied**, and the Clerk of Court is directed to enter judgment in Petitioner's favor and close this case.

Dated this 2nd day of June, 2026.

_____
Honorable Rosemary Márquez
United States District Judge